**UNITED STATES of America, Appellee,**

v.

**Ira Keith WITSCHNER, Appellant.**

**No. 80–1054.**

United States Court of Appeals, Eighth Circuit.

Submitted May 19, 1980.

Decided July 3, 1980.

Rehearing and Rehearing En Banc Denied July 29, 1980.

---

James P. Quinn, Kansas City, Mo., argued, for appellant; Philip F. Cardarella, Kansas City, Mo., on brief.

Edward D. Holmes, Atty., U. S. Dept. of Justice, Kansas City, Mo., argued, for appellee; Ronald S. Reed, Jr., U. S. Atty., Kansas City, Mo., on brief.

Before HENLEY and McMILLIAN, Circuit Judges, and ROY, District Judge.*

HENLEY, Circuit Judge.

Appellant Ira Keith Witschner is an attorney who was indicted for mail fraud in

---

* The Honorable Elsijane Trimble Roy, United States District Judge, Eastern and Western Districts of Arkansas, sitting by designation.

June, 1979 together with a fellow attorney, Joseph Mounter. The nineteen-count indictment alleged use of the mails to defraud insurance companies in violation of 18 U.S.C. § 1341, and conspiracy to commit mail fraud in violation of 18 U.S.C. § 371. Of the twelve counts relevant to appellant, the jury acquitted Witschner on those counts alleging the mailing of an attorney's lien letter. He was convicted on seven counts of mailing a fraudulent medical report and on the conspiracy count. On each of the seven mail fraud counts sentences of five years were imposed to run concurrently and fines aggregating $7,000.00 were assessed. On the conspiracy count the court imposed a sentence of five years and $10,000.00. This appeal followed. We affirm.

The scheme to defraud insurance companies operated over seventeen months, from June 1, 1975 to November, 1976, during which time attorneys Witschner and Mounter either prepared or caused to be prepared false medical reports signed by Dr. J. Michael Smith. The diagnoses on the reports were generally accurate, but the number of doctor visits was inflated with the result that insurance claims considerably higher than Dr. Smith's actual fees were submitted.

Testimony in support of the government's charges was received from Dr. Smith as an immunized witness, from Dr. Smith's secretary, from Dr. Smith's receptionist, and from patients who were Witschner's clients. Dr. Smith testified that in the case of each patient referred to him by Witschner, the number of office visits listed on the medical report and on Dr. Smith's office ledger card was inflated. Dr. Smith admitted receiving $200.00 for each false report made at the request of Witschner or Mounter. The secretary, Barbara Savage, linked appellant to active participation in the scheme, testifying that Witschner asked her to prepare false ledger cards so that the doctor's office records would correspond to the false insurance claims. Separate, accurate financial billing records, however, were kept in the doctor's office. This testimony was corroborated by Dr. Smith's receptionist and by specific patients named in the indictment, who admitted seeing Dr. Smith for fewer times than the number of doctor visits reported on the insurance claims.

At trial Witschner pursued two lines of defense. While conceding that an inflated number of doctor visits had been reported on insurance claims, he attempted to show that Dr. Smith was responsible for the falsifications and that he, Witschner, had no knowledge of the inflated numbers. He also attempted to discredit the testimony of Albert Bossert, the patient who linked him most directly to active and knowing participation in the scheme.

On appeal, Witschner raises numerous allegations of error, only a few of which require extensive discussion.

## I. Similar Crimes Evidence

■ Witschner alleges first that the district court abused its discretion in admitting evidence of similar criminal acts not charged in the indictment but done in concert with Dr. Smith. The contested evidence consisted of forty-three ledger cards pertaining to patients referred to Dr. Smith by Witschner but not named in the indictment,[1] eight ledger cards for patients referred by codefendant Mounter[2] and certain financial records of Dr. Smith. Appellant argues that this evidence is not clear and convincing evidence of wrongdoing on his part, because the government failed to show who ordered these false records prepared. He also alleges that the evidence created a risk of undue prejudice and confusion of the jury, in violation of Fed.R.Evid. 403.

It is uncontested that other crimes evidence is admissible under Fed.R.Evid. 404(b) to show intent, plan, knowledge and absence of mistake or accident. The additional ledger cards were expressly offered for this purpose as part of the government's attempt to prove that Witschner and Moun-

1. Government Exhibit 17.

2. Government Exhibits 17h and 17o.

ter had knowledge of the inflated number of visits and that submission of the false medical reports was not an accident.

We are satisfied that the evidence was properly admitted under our recent cases, which have required, in addition to the purpose articulated in Rule 404(b), a showing that (1) a material issue on which the other crimes evidence may be admissible has been raised; (2) the proffered evidence is relevant to that issue; (3) the evidence of other crimes is clear and convincing; and (4) the evidence relates to wrongdoing similar in kind and close in time to the charge at trial. *United States v. Frederickson*, 601 F.2d 1358, 1365 (8th Cir.), *cert. denied*, 444 U.S. 934, 100 S.Ct. 281, 62 L.Ed.2d 193 (1979) (and cases cited therein).

Here, the material issue of appellant's knowing participation in the scheme was raised at trial, and the additional ledger cards were relevant to this issue. The evidence related to wrongdoing similar in kind and close in time to the charge at trial. As to the prerequisite that the evidence be clear and convincing, *id.*, we find that the additional false ledger cards were sufficiently linked to Witschner to constitute clear evidence of wrongdoing on his part. Barbara Savage and Dr. Smith testified that Witschner directly ordered some of the ledger card falsifications and that he had knowledge of Mounter's ordering of the remaining falsifications. Although appellant argues that Dr. Smith's testimony as an immunized witness should be discounted, this contention is merely an attack on a witness's credibility. As we have frequently reiterated, it is not our function to try the case de novo or to pass upon the credibility of witnesses or the weight to be given their testimony. *Stanley v. Henderson*, 597 F.2d 651, 653 (8th Cir. 1979), *quoting Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Goldman*, 593 F.2d 129, 131–32 (8th Cir. 1979).

A somewhat closer question is presented by the allegation that admission of certain extra ledger cards required Witschner to address matters outside the indictment, unduly prejudicing his case at trial and confusing the jury. Although this argument has some appeal, we find on balance no error by the district court because the additional false ledger cards were highly probative. Relevant, probative evidence is properly admitted unless its probative value is substantially outweighed by the danger of undue prejudice. Fed.R.Evid. 403.

In light of appellant's line of defense at trial, the jury could conceivably have been misled into thinking that busy attorneys with hundreds of cases did not intend to defraud insurance companies on the several counts charged in the indictment. The additional ledger cards enabled the jury to obtain a picture of the defendants' conspiratorial relationship with each other and demonstrated clearly that the cards and reports in the charged mailings were not accidents or mistakes. Although the government did not prove that the additional ledger cards were prepared in connection with an insurance claim, each card carried a carbon entry showing that Mounter or Witschner made payment to Dr. Smith. It was therefore reasonable to infer that the cards were used to bolster false claims made in the same manner as those charged in the indictment.

In these circumstances, and mindful of the trial court's broad discretion over the admission of evidence, *United States v. Fuel*, 583 F.2d 978, 988 (8th Cir. 1978), *cert. denied*, 439 U.S. 1127, 99 S.Ct. 1044, 59 L.Ed.2d 88 (1979), we find no error in the district court's admission of the additional false ledger cards and other financial records.

## II. Motion in Limine

Witschner next contends that the district court's refusal to rule on his motion in limine prior to presentation of the defense's case deprived him of his constitutional right to testify in his own behalf. Appellant's motion in limine, filed on the first day of trial, sought to exclude evidence of "Caruso claims," that is, claims in a second insurance scheme which Witschner allegedly had set up with one Dr. Caruso. At the conclusion of the government's case, Witschner sought

a ruling on the motion in limine so as to ascertain before taking the stand whether the Caruso evidence could be used against him in rebuttal. The trial court declined to rule until after his testimony and until the evidence was actually offered. Witschner contends that he was prevented from taking the stand by the court's refusal to rule.

■ There is no merit to this contention, which attempts to elevate a matter of trial tactics to the level of a constitutional question. The district court was understandably reluctant to rule on the allowable scope of impeachment without first hearing the defendant's testimony on direct examination, especially since the admissibility of evidence regarding a similar insurance fraud might present a rather complex issue. As to the timing of a ruling on the scope of cross-examination, a trial court has discretion to issue an advance ruling, *United States v. Pfingst*, 477 F.2d 177, 193 (2d Cir.), *cert. denied*, 412 U.S. 941, 93 S.Ct. 2779, 37 L.Ed.2d 400 (1973); *United States v. Palumbo*, 401 F.2d 270 (2d Cir. 1968), *cert. denied*, 394 U.S. 947, 89 S.Ct. 1281, 22 L.Ed.2d 480 (1969) (context of prior conviction evidence), but it need not do so, *United States v. Johnston*, 543 F.2d 55, 59 (8th Cir. 1976) (context of prior conviction evidence); *United States v. Pfingst, supra*, 477 F.2d at 193, even if the refusal to do so prevents a defendant from testifying in his own behalf. *United States v. Kahn*, 472 F.2d 272, 282 (2d Cir.), *cert. denied*, 411 U.S. 982, 93 S.Ct. 2270, 36 L.Ed.2d 958 (1973). The test on appellate review is whether the trial court abused its discretion in failing to issue an advance ruling. *United States v. Kahn, supra*, 472 F.2d at 282; *United States v. Crisona*, 416 F.2d 107, 117 (2d Cir. 1969), *cert. denied*, 397 U.S. 961, 90 S.Ct. 991, 25 L.Ed.2d 253 (1970) (prior convictions evidence).

■ Here, we find no abuse of discretion in the district court's actions and we decline to hold that the rule of discretion should be turned into one of compulsion. The trial court's power to limit cross-examination is often best exercised after hearing the direct testimony of the witness. Neither the fifth

and sixth amendments nor the Federal Rules of Evidence impress upon a trial court a duty to aid the defendant in formulating his trial strategy regarding the risks of impeachment should he decide to take the stand. *United States v. Oakes*, 565 F.2d 170, 171 (1st Cir. 1977); *United States v. Kahn, supra*, 472 F.2d at 282.

## III. Curtailment of Cross-Examination

Appellant's third and perhaps closest contention on appeal is that the trial court erred when it ruled that he could not cross-examine prosecution witness Albert Bossert concerning the parole status of Bossert's father. Bossert was the only client of Witschner who testified that Witschner instructed him to lie about the number of times he visited Dr. Smith.

We note at the outset that counsel for Witschner was afforded at least some opportunity to impair Bossert's credibility. In front of the jury, Bossert was asked whether he recalled telling a postal inspector that he, Bossert, had seen Dr. Smith at least ten times, in contrast to his trial testimony that he saw Dr. Smith no more than three times. The defense then attempted to introduce a motive for Bossert's change in testimony by beginning a line of questioning which would have revealed that Bossert's father was a federal parolee. The government objected on grounds of relevance, and the court adjourned for an *in camera* hearing on the matter. Ultimately, the court ruled that impeachment of Bossert with someone else's crimes was not material and could be highly prejudicial.

■ We find this limitation of the defense's cross-examination troublesome, if not erroneous. It is well settled that the sixth amendment right of confrontation includes the right to cross-examine witnesses, *Davis v. Alaska*, 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1109–1110, 39 L.Ed.2d 347 (1974); *Patterson v. McCarthy*, 581 F.2d 220 (9th Cir. 1978), and that an important function of cross-examination is to test the witness's motivation in testifying. *Davis v. Alaska, supra*, 415 U.S. at 316–17, 94 S.Ct.

at 1110–1111; *Greene v. McElroy*, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959); *Patterson v. McCarthy, supra,* 581 F.2d at 221.

■ However, it is also true that the trial court had discretion to weigh the possible prejudice which might ensue from opening up collateral matters. *United States v. Qualls,* 500 F.2d 1238, 1240 (8th Cir.), *cert. denied,* 419 U.S. 1051, 95 S.Ct. 628, 42 L.Ed.2d 646 (1974). Here, the trial court expressed concern about the prejudicial impact of testimony regarding the parole status of Bossert's father, in circumstances where there was arguably insufficient nexus to bias on Bossert's part. Bossert testified *in camera* that he was not sure whether his father was still on parole; that he lived apart from his father; that he had not discussed the case at bar with his father; that he had never told the prosecutor in the present case of his father's status; and that no one in the government had hinted at favors which might accrue to his father through favorable testimony.

The prosecutor advised the court that Bossert's attorney had inquired concerning Bossert's trial subpoena and had mentioned Bossert's relatives with records. However, the prosecutor stated that he had not brought any pressure to bear on the witness or intimated to him that his family might benefit if he went along with the government's case.

Bossert offered a plausible explanation for his change in testimony, indicating that he had not regarded his interview with the postal inspector as a serious matter and had not at the time of the postal inspector's interview signed a statement or been called down to discuss the matter.

In light of this *in camera* testimony, we cannot say that it was unreasonable for the trial court to refuse testimony regarding the parole status of Bossert's father. In the past we have in similar circumstances found no abuse of discretion. *United States v. Qualls, supra,* 500 F.2d 1238 (affirming refusal to allow defense to question government agents regarding possible bias

resulting from job suspension and indictments against them, where trial court conducted *in camera* inquiry and where court determined that government had not entered into any bargains with the indicted agents); *see also United States v. Quinn,* 543 F.2d 640, 650–52 (8th Cir. 1976). The present case is distinguishable from cases in which the potential for bias is more strongly indicated by the witness's *own* parole or other legal status. *Cf. Patterson v. McCarthy,* 581 F.2d 220 (9th Cir. 1978) (refusal to allow cross-examination of witness regarding his parole status was error); *United States v. Partin,* 493 F.2d 750, 757–60 (5th Cir. 1974), *later app. United States v. Partin,* 552 F.2d 621 (5th Cir.), *cert. denied,* 434 U.S. 903, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977); *United States v. Dickens,* 417 F.2d 958, 960–61 (8th Cir. 1969); *see generally* 3 Weinstein's Evidence ¶ 601[03] at 607–26, 607–27 (1978).

## IV. Other Allegations

■ Appellant's other allegations of error warrant only brief mention. Witschner contends that the trial court erred in denying severance from codefendant Mounter where the evidence against Mounter was more damaging. It is not clear to us that the evidence against Mounter was in fact more damaging, but, assuming it was, appellant was not entitled to severance. *United States v. Jackson,* 549 F.2d 517, 525 (8th Cir.), *cert. denied,* 430 U.S. 985, 97 S.Ct. 1682, 52 L.Ed.2d 379 (1977). The preference for joint trials of jointly indicted defendants, especially where conspiracy is charged, is not limited by any requirement that the quantum of evidence regarding each be equal. *Id.; United States v. Graham,* 548 F.2d 1302 (8th Cir. 1977).

■ Appellant also contends that the prosecutor introduced a new, surprise theory of fraud in his rebuttal argument by arguing for the first time that Witschner's fraud included the submission of doctor bills to insurance companies larger than the

$200.00 paid to Dr. Smith. This contention is refuted by the record. The indictment clearly put the fraudulent nature of the $200.00 payments at issue,[3] and the defense itself addressed the flat fee arrangement in its opening statement.

■ Appellant's final contention[4] is that the district court erred in disallowing defense testimony on an insurance industry practice of maintaining "reserves," a practice which allows prediction of the likely amount of an uncontested insurance settlement. Witschner wished to argue that it would not be unusual for a busy attorney to ignore the contents of a medical claim which fell within the probable level of an uncontested settlement.

In determining whether proffered evidence is misleading or confusing, the trial court is given a great deal of discretion. Fed.R.Evid. 403; *United States v. Briscoe*, 574 F.2d 406, 408 (8th Cir.), *cert. denied*, 439 U.S. 858, 99 S.Ct. 173, 58 L.Ed.2d 165 (1978). We cannot disagree with the district court that testimony on insurance industry reserves would have been "far afield" from any issue in the case and potentially confusing to the jury and we find no error in exclusion of that evidence.

The judgment appealed from is in all things affirmed.

---

3. The indictment alleged that "WITSCHNER . . . did pay and cause to be paid Dr. James Michael Smith certain fees which were considerably less than the fees alleged in medical reports . . . submitted to insurance carriers."

4. At oral argument, counsel abandoned appellant's challenge to allegedly erroneous statements contained in Witschner's presentence report.