840 F.2d 587
 25 Fed. R. Evid. Serv. 235
 UNITED STATES of America, Appellee,
v.
Ralph MASTERS, Appellant.
UNITED STATES of America, Appellee,
v.
Donald ROBERSON, Appellant.
UNITED STATES of America, Appellee,
v.
Donald BROWN, Appellant.
UNITED STATES of America, Appellee,
v.
James BROWN, Appellant.
 87-1006, 87-1023, 87-1124 and 87-1125.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 12, 1987.
Decided Feb. 29, 1988.
Rehearing Denied April 1, 1988.
 
 Richard K. Zerr, St. Louis, Mo., for D. Brown.
 Brad Dede, Pacific, Mo., for other appellants.
 Dean R. Hoag, Asst. U.S. Atty., St. Louis, Mo., for U.S.
 Before FAGG and MAGILL, Circuit Judges, and BRIGHT, Senior Circuit judge.
 MAGILL, Circuit Judge.
 
 
 1
 Ralph Masters, James Brown, Donald Brown, and Donald Roberson appeal their convictions following a joint trial on charges stemming from their business of marketing stolen trucks in interstate commerce. We affirm their convictions for the reasons set forth below.
 
 
 2
 I. BACKGROUND.
 
 
 3
 In the spring of 1985, the Federal Bureau of Investigation established an undercover operation in St. Louis, Missouri, to catch traffickers in stolen truck parts. The operation was set up to look like a truck repair shop which also dealt in the purchase of stolen truck parts. The office of the repair shop was equipped with a video recorder, and the undercover agent on the scene was also wired with a body recorder so conversations could be recorded anywhere on the premises. FBI Agent Terry Coff was brought in from Chicago to pose as the shop owner. Coff put the word out on the streets that he was interested in purchasing large diesel engines and did not care where the engines came from.
 
 
 4
 Early in December 1985, Coff met with Ralph Masters and began negotiations for the purchase of stolen truck parts. After several meetings, Coff agreed to purchase an engine, transmission, and a cut-off[1]. Masters later told Coff that the engine he had arranged to sell to Coff was no good, and that he had a better engine to deliver to Coff. A delivery date was set. On January 2, 1986, James Brown, his brother Donald Brown, and Donald Roberson arrived at Coff's repair shop and unloaded the engine, transmission and cut-off. While the other men were unloading the parts, Coff and James Brown went into Coff's office. In the ensuing conversation, James Brown opined that the engine, as well as the truck from which it was taken, was probably recorded as stolen. James Brown also offered to sell the tires and wheels from the stolen truck to Coff for $2,400. This conversation was recorded on audiotape and videotape.
 
 
 5
 After the parts were unloaded, Coff invited the Browns and Roberson into the office for coffee. While the three defendants were present, Coff asked: "Well, who do I pay?" James Brown replied that it did not make any difference, and either Roberson or Donald Brown said "pay him," indicating James Brown. Coff handed James Brown a roll of money, and the three defendants began counting. Coff then brought up the tire and wheel purchase. The price was negotiated down to $2,200, and it was agreed that the tires and wheels would be delivered to Coff directly, instead of going through Masters. The entire conversation in the office between the four men was recorded on audiotape and videotape.
 
 
 6
 On January 6, 1986, James Brown and Donald Roberson delivered the tires and wheels and were paid the $2,200. The delivery of the tires and wheels and the subsequent conversation and payoff in the office of the shop were recorded on audiotape and videotape.
 
 
 7
 Masters, James and Donald Brown, and Roberson were tried together on a two-count indictment. The first count was conspiracy to transport in interstate commerce stolen goods having a value in excess of $5,000, in violation of 18 U.S.C. Sec. 371. The second count was interstate transportation of stolen goods, in violation of 18 U.S.C. Sec. 2314. After a five-day trial,[2] the jury returned convictions against James Brown, Masters and Roberson on both counts. Donald Brown was convicted of Count II (transportation), but not Count I (conspiracy). All four defendants now raise a variety of challenges to their convictions, only some of which merit discussion.
 
 
 8
 II. DISCUSSION.
 
 
 9
 A. Severance.
 
 
 10
 Donald Brown claims that the "inconsistent verdicts" the jury returned in his case demonstrate that the district court abused its discretion in denying his motion for severance. He points to his acquittal on the conspiracy charge as evidence of his lack of "guilty knowledge" that the truck parts he delivered were stolen. The only other basis for his conviction, he concludes, is that the jury was unable to compartmentalize the evidence that was applicable only to his co-defendants, one of whom was his brother. He thus argues that the jury returned a guilty verdict against him on the transportation charge solely because of his association with his co-defendants. We disagree.
 
 
 11
 While the notion of guilt by association is repugnant to our system of justice, see Brown v. Frey, 807 F.2d 1407, 1415 (8th Cir.1986) (Bright, J., dissenting), we are not convinced that this is such a case. First, we note that the jury acquitted Donald Brown on the conspiracy charge, while convicting his co-defendants of the same offense. We have consistently characterized this type of split verdict among co-defendants on the same charge as "convincing evidence that the jury was able to separate the proof as to each defendant." United States v. Lueth, 807 F.2d 719, 731 (8th Cir.1986) (citations omitted). Moreover, we are unpersuaded by Donald Brown's attempt to bring the verdicts the jury returned on the counts against him into opposition with each other, for the simple reason that the jury verdicts returned in his case are not inconsistent. Although we will not join in Appellants' conjecture over the jury's motivation for returning the verdicts that it did, we observe that guilty knowledge is only one of the many elements of a conspiracy, proof of any one of which the jury might have found wanting in considering the conspiracy charge against Donald Brown.
 
 
 12
 Turning to the record, it is doubtless true, as Brown asserts, that the evidence against his co-defendants was more damaging than the evidence against him. But there is also clear evidence indicating more than Donald Brown's innocent participation in the delivery of truck parts, including a recorded statement by his brother James affirming that all of the delivery men knew what was going on with the delivery of the stolen truck parts. We have never held that the same quantum of evidence must be presented against each co-defendant in a joint trial, but instead have cautioned that the evidence against each defendant must meet the guilt beyond a reasonable doubt standard. See United States v. Dempewolf, 817 F.2d 1318, 1322 (8th Cir.), cert. denied, --- U.S. ----, 108 S.Ct. 245, 98 L.Ed.2d 203 (1987). Donald Brown has not shown that the government has failed to satisfy this standard with respect to his conviction, and we thus reject his claim that he is entitled to reversal or a new trial.
 
 
 13
 B. Motion In Limine.
 
 
 14
 Donald Brown and James Brown together contend that the district court's refusal to rule on their motion in limine deprived them of their right to testify in their own defense. At trial, both Browns submitted motions in limine to exclude any evidence about their actions following the termination of the conspiracy alleged in Count I of the indictment. The FBI gathered considerable evidence about other criminal activities after the January 6, 1986 delivery of the stolen wheels and tires. The district court indicated that it was inclined to admit that evidence as "other crimes or bad acts" evidence under Fed.R.Evid. 404(b), but held its ruling in abeyance until the evidence was actually presented. The Browns now claim that the district court's refusal to rule on their motion in limine presented them with the unpalatable choice of keeping silent or testifying at risk of impeachment.
 
 
 15
 This court has held that it is not an abuse of discretion for a district court to refuse to rule on a motion in limine, even if that refusal inhibits a defendant from testifying on his own behalf, United States v. Witschner, 624 F.2d 840, 844 (8th Cir.), cert. denied, 449 U.S. 994, 101 S.Ct. 532, 66 L.Ed.2d 291 (1980), and we reaffirm that holding today. Donald Brown and James Brown are, in essence, attempting to transmute a matter of trial tactics into an issue of constitutional significance. Their argument assumes that defendants in a criminal trial have a right to a judge's rulings on motions in limine before the trial begins, an assumption at odds with circuit precedent. While we have made it clear that a trial court has the authority to give an advance ruling on the permissible scope of cross-examination in response to a motion in limine, Witschner, 624 F.2d at 844, we have explicitly refused to turn this rule of discretion into one of compulsion. Id. We will not question a refusal to issue an advance ruling absent a clear abuse of discretion. No such abuse is evident, as here the evidence appeared at least marginally to be admissible.[3]
 
 
 16
 C. Introduction of Videotape Evidence.
 
 
 17
 Donald Brown and Donald Roberson join to challenge the district court's admission into evidence of a segment of a videotape recording of the January 2, 1986 delivery of stolen truck parts. Audiotape and videotape recordings were made of the January 2, 1986 delivery. The government copied those recordings involving a particular defendant, and turned the copies over to the respective party. In addition, the government's investigative report, with its transcription of both audio and video tapes, was made available to all of the defendants.
 
 
 18
 After viewing copies of the videotape, counsel for Donald Brown and counsel for Roberson told the jury in their opening statements that neither defendant would be seen in the January 2, 1986 videotape. During the course of the trial, defense counsel learned that a segment of the videotape, which showed both men present in the office of the repair shop for the payoff for the stolen truck parts had not been copied and turned over to them. Counsel objected to the playing of this missing segment, based on the government's failure to disclose material evidence, as required by Fed.R.Crim.P. 16. After finding that the government's failure to copy the missing segment of the videotape resulted from inadvertence, the district court overruled defense counsels' objections. The missing segment of the videotape was played to the jury.
 
 
 19
 Donald Brown and Donald Roberson now emphatically argue that the district court's failure to exclude this missing segment of the videotape constitutes reversible error, in light of counsels' opening statements to the jury. They contend that introduction of the missing segment of the videotape both scuppered the defense and undermined their theory of innocent participation in the January 2, 1986 delivery.
 
 
 20
 We cannot accept that introduction of the missing segment of the videotape prejudiced the defendants to such an extent that it denied them a fair trial. The determination of prejudice in this case turns upon the impact that the undisclosed evidence had upon the defendants' cases. As defense counsel argued in support of their objection to the admission of the undisclosed segment of the videotape, the videotape was generally duplicative of other audio recordings and the transcripts previously disclosed to the defense counsel. The undisclosed segment of the tape was not new evidence, but merely old, familiar evidence in a different form. We agree with the district court that the audio tape and accompanying transcripts should have alerted defense counsel both to the presence of the defendants on the videotape and the failure of the FBI to fully copy the videotape. We also note that defense counsel must have been aware that FBI Agent Coff would testify that both Donald Brown and Donald Roberson were present at the payoff for the January 2, 1986 delivery.
 
 
 21
 Defendants' claim of prejudice thus boils down to speculation that counsels' credibility was called into question by their opening statements. While the effect on counsels' credibility is entitled to some weight in an assessment of prejudice resulting from a Rule 16 violation, we do not find that the possible impact of defense counsels' representations to the jury was of sufficient moment to justify reversal.
 
 
 22
 D. Insufficiency of the Evidence.
 
 
 23
 Ralph Masters attacks his conviction from two slightly different angles. He first argues that the introduction of evidence of the January 6, 1986 tire and wheel delivery was prejudicial error, claiming that there was no evidence linking him with the delivery of the stolen tires and wheels.
 
 
 24
 We disagree. It is settled law that each co-conspirator need not participate in every step of the conspiracy. United States v. Garcia, 785 F.2d 214, 225 (8th Cir.), cert. denied, 475 U.S. 1143, 106 S.Ct. 1797, 90 L.Ed.2d 342 (1986). That his co-conspirators made contributions to the marketing of the stolen truck parts does not limit evidence of the overall conspiracy that can be introduced against Masters, because "the conspiracy does not end, of necessity, before the spoils are divided among the miscreants." United States v. Potamitis, 739 F.2d 784, 789 n. 10 (2d Cir.), cert. denied, 469 U.S. 934, 105 S.Ct. 332, 83 L.Ed.2d 269 (1984) (citation omitted). It is enough in the present case that the evidence showed that the stolen tires and wheels in question came from the stolen tractor-trailer, and that there was ample evidence implicating Masters in the conspiracy to steal the tractor-trailer.
 
 
 25
 Masters also questions the sufficiency of the latter evidence, denying that he was a member of the conspiracy altogether. We are not persuaded by this argument. Before we will usurp the function of the jury as a trier of fact, Masters must show that the evidence was so insuffient that a reasonable-minded jury must have entertained a reasonable doubt that he was involved in the conspiracy, United States v. Noibi, 780 F.2d 1419, 1421 (8th Cir.1986), and this he has not done. A close review of the evidence, including Agent Coff's testimony and the transcripts of the tape recordings, indicates that the jury's finding as to Master's guilt was well within the boundaries of the "reasonable doubt" standard. Masters has not carried his considerable burden of proving insufficiency of the evidence, and his convictions stand.
 
 
 26
 III. CONCLUSION.
 
 
 27
 All four defendants raise numerous additional challenges to their convictions, all of which we have reviewed and hold to be without merit. Accordingly, the judgment of the district court is in all respects affirmed.
 
 
 
 [1]
 A cut-off is the rear-drive axle of a semi-tractor
 
 
 [2]
 The Honorable John F. Nangle, Chief Judge, United States District Court for the Eastern District of Missouri, presiding
 
 
 [3]
 Although we are aware of a circuit decision to the contrary, United States v. Burkhead, 646 F.2d 1283 (8th Cir.), cert. denied, 454 U.S. 898, 102 S.Ct. 399, 70 L.Ed.2d 214 (1981), we believe that the rule enunciated in Burkhead should not be extended beyond the "special circumstances" of that case. In Burkhead, the district court was reversed for refusing to decide before trial whether convictions on a separate count of the same indictment could be used to impeach a defendant during a second trial involving essentially the same facts. We were concerned that "[p]ermitting impeachment following such a severance of counts would virtually ensure a second conviction in every case in which the first trial resulted in conviction." Burkhead, 646 F.2d at 1285. No such special circumstances are implicated in this case