**James Riley HENDERSON, Appellant,**

**v.**

**UNITED STATES of America, Appellee.**

**No. 86–1958–EA.**

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 13, 1987.

Decided April 6, 1987.

Hayward M. Battle, Little Rock, Ark., for appellant.

Robert J. Govar, Asst. U.S. Atty., Little Rock, Ark., for appellee.

Before BOWMAN and MAGILL, Circuit Judges, and HARPER,* Senior District Judge.

HARPER, Senior District Judge.

A grand jury indicted appellant Henderson on one count of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846, one count of perjury in violation of 18 U.S.C. § 1623(a), and one count of subornation of perjury in violation of 18 U.S.C. § 1622.

Henderson was tried by a jury on June 9 and 10, 1986, and convicted of all charges contained in the indictment. District Judge Henry Woods sentenced Henderson to a term of five years imprisonment on the conspiracy count, a consecutive term of three years imprisonment on the perjury count, and a concurrent term of three years on the subornation count. This appeal is taken from these convictions.

For reversal, Henderson contends that, (1) there was insufficient evidence to sustain his conviction for conspiracy to distribute cocaine; (2) the district court erred in admitting the testimony of John Achor, former attorney for Charlene Wilks; and (3) the district court erred in admitting Charlene Wilks' prior testimony given before the grand jury.

The evidence, viewed in the light most favorable to the Government, together with all reasonable inferences that may logically be drawn therefrom, is as follows: During January, 1983, Linda Saunders was working as a Customer Service Agent for Delta Airlines at the Detroit Metropolitan Airport in Detroit, Michigan. Part of her duties included accepting packages which customers wanted to send through Delta Airlines' ticket counter to ticket counter freight system. During the early morning hours of January 19, 1983, a slender black man ap-proached Saunders while she was tending the ticket counter. The man informed Saunders that he wanted to send a package containing a wallet to an individual in Little Rock, Arkansas. Saunders testified that the man who presented this package for delivery was perspiring a lot and acting very nervous. This unidentified black man paid approximately $45.00 to ship the wallet to an individual identified on the Delta Airlines' special handling freight bill as "Spunky Wilks."

On January 25, 1983, the same unidentified black man again appeared at the Delta Airline ticket counter at the Detroit Metropolitan Airport during the early morning hours. The man again approached Saunders and inquired about sending a package from Detroit to Little Rock, Arkansas. The man informed Saunders that the package contained a sweater. Since Saunders believed that it seemed suspicious for anyone to be spending $45.00 to send a sweater from Detroit to Little Rock at midnight, she decided to turn the package over to her supervisor, Greg Albright. Albright took the package and had it examined by an X-ray machine. Based on this examination, Albright believed that the customer had misrepresented the contents of the package, and based upon this belief, he opened the package pursuant to the company policy of Delta Airlines. When the package was opened, Albright found two plastic packages containing a cream-colored powder substance.

Albright then called the local airport security, who in turn alerted the Drug Enforcement Administration (DEA). About an hour later, DEA Special Agent Thomas R. Anderson arrived at the Detroit Metropolitan Airport, contacting Albright upon his arrival. Albright showed Agent Anderson a package wrapped in gray masking tape which had previously been opened. The package contained a number of plastic bags containing a white powder substance. Agent Anderson field-tested

* The HONORABLE ROY W. HARPER, Senior U.S. District Judge for the Eastern District of Missouri, sitting by designation.

the powder contained in the plastic bags and observed a positive reaction for cocaine. He took a sample of the powder from the bags for further testing purposes and then resealed the bags and re-packaged the parcel. He then contacted the DEA office in Little Rock, Arkansas and arranged to make a delivery of the suspected drugs through the normal freight channels of Delta Airlines.

Special Agent Robert D. Morris of the Little Rock DEA office received the information concerning the parcel's delivery from Detroit to Little Rock. Agent Morris was told that the package was addressed to Shirley Payne at 1249 State Street. Prior to the arrival of the package, Agent Morris attempted to verify the address specified on the freight bill. Agent Morris determined that the address written on the freight bill was non-existent, and was actually a part of the Philander Smith College campus in Little Rock.

The Little Rock DEA office subsequently assembled a surveillance team for the purpose of identifying the person who would come to the Little Rock Airport to pick up the package. Shortly after 11:00 a.m., a black woman, subsequently identified as Charlene Wilks, appeared at the Delta Airlines ticket counter at the Little Rock Airport and asked for a package from Detroit, Michigan. Wilks signed the name "Shirley Payne" to the freight bill of Delta Airlines and took possession of the package. Wilks was subsequently arrested by federal and state officers at the Little Rock Airport.

A search of the person of Charlene Wilks produced a piece of yellow paper which bore a number of handwritten notations. One of these notations was the name and address of the person who appeared on the return address of the package delivered from Detroit to Little Rock. Another notation read, "Shirley Payne, 1249 State Street," a time notation and a flight number. Wilks testified at trial that the handwritten notations were made by appellant Henderson. Wilks also testified that she was Henderson's live-in girl friend during that time period.

According to Wilks' testimony, Henderson had told her to go to the airport and pick up the package. Although he did not tell her what the package contained or who it was for, Henderson did tell Wilks that the package would be arriving on Delta Airlines Flight Number 947, at approximately 10:45 a.m. After her arrest, Wilks told Agent Morris that she had picked up the package for a friend, but she refused to identify that friend.

At trial, the Government also introduced records of long-distance telephone toll calls for the home telephone numbers of Henderson and Sherman Chester Garvin, Henderson's alleged co-conspirator. These telephone records showed a series of long-distance telephone calls made to and from Henderson's home in Little Rock, Arkansas to and from Garvin's home in Pontiac, Michigan, immediately prior to the delivery of the package seized from Wilks at the Little Rock Airport on January 25, 1983.

Finally, during the month of July, 1983, FBI agents in Detroit, Michigan executed a federal search warrant at Garvin's residence in Pontiac, Michigan, wherein they recovered a number of items associated with drug trafficking. In addition, the FBI agents recovered a packet of documents which the Government had previously provided to Wilks' attorney, John Achor, as part of the discovery materials in the Government's case against Wilks. At trial, Achor testified that he had copied these documents while he was representing Wilks and had given them to Henderson.

■ Henderson contends that the evidence fails to establish the degree of intent required to find him guilty of conspiring to distribute cocaine. "To be convicted of conspiracy under 21 U.S.C. § 846, the Government must prove, by direct or circumstantial evidence, that there was an agreement among the defendants to achieve an illegal purpose." *United States v. Grego,* 724 F.2d 701, 704 (8th Cir.1984). Such an agreement need not be expressed, but may be implied from the surrounding circumstances. "Proof is not required that a defendant have knowledge of all the details of the conspiracy; rather, only knowl-

edge of its essential object is required." *United States v. Lee*, 743 F.2d 1240, 1250 (8th Cir.1984). After careful consideration, we believe that the jury could have reasonably inferred from the evidence that Henderson knew of the essential purpose of the conspiracy and, furthermore, acted wilfully with the intent to advance its purposes.

We next address whether or not the district court erred in admitting the testimony of John Achor, former attorney for Charlene Wilks. Henderson contends that it was erroneous to admit Achor's testimony because it was subject to the attorney-client privilege. This argument is without merit.

Achor's testimony was to the effect that he made copies of certain discovery materials obtained during the course of, and pertaining to, his representation of Charlene Wilks. Achor further testified that he gave these copies to Henderson at that time. As the subject matter of Achor's testimony does not pertain to any confidential communication relating to Wilks' representation, the information revealed during Achor's testimony does not fall within the attorney-client privilege. Moreover, the attorney-client privilege belongs to and exists solely for the benefit of the client. The evidence clearly established that Henderson was never Achor's client and, therefore, Henderson lacks standing to object to Achor's testimony on the basis of attorney-client privilege.

Finally, we consider whether or not the district court erred in admitting, during the Government's case-in-chief, Charlene Wilks' prior testimony given before the grand jury. While questioning Wilks on direct examination, the Government's attorney quoted from, and introduced into evidence, several passages from the transcript of the grand jury proceeding, wherein Wilks testified that she knew a woman by the name of Shirley Payne and the extent of her relationship with Payne. After reading each question asked of Wilks at the grand jury proceeding and Wilks' subsequent response, the Government's attorney would ask Wilks whether her response before the grand jury was true. Wilks repeatedly admitted that her testimony given before the grand jury was false, and that she had intentionally lied to the grand jury.

Henderson contends that admitting the evidence of Wilks' prior testimony violated the long-standing principle that a witness' testimony may not be corroborated with prior consistent statements. The Government contends that the prior testimony was introduced for the sole purpose of establishing that Wilks had committed perjury before the grand jury, which was directly relevant to the subornation of the perjury charge against Henderson.

After carefully reviewing the transcript, we believe that the principle invoked by Henderson concerning corroboration of a witness' testimony by prior consistent statements is not applicable in the present case because Wilks' prior grand jury testimony was inconsistent with her testimony at trial. Furthermore, and contrary to Henderson's assertions, admitting Wilks' prior perjured testimony would not have the effect of bolstering Wilks' credibility. Rather, it would detract from it. In any event, Henderson was not prejudiced by the admission of this clearly relevant evidence.

In conclusion, there was substantial evidence supporting Henderson's conviction for conspiracy to distribute cocaine, and there was no error in admitting Achor's testimony or the prior testimony of Wilks given before the grand jury.

The district court's judgment is affirmed in all respects.