**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Stephen R. PROFFIT, Defendant–
Appellant.**

No. 94–3392.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 10, 1995.

Decided Feb. 28, 1995.

Raymond Conrad, Federal Public Defender, Kansas City, MO, argued for appellant.

John Daniel Stewart, Asst. U.S. Atty., Kansas City, MO, argued for appellee.

Before HANSEN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and WILL,* Senior District Judge.

WILL, Senior District Judge.

Stephen R. Proffit was tried before a jury and convicted of thirteen counts of wire fraud in violation of 18 U.S.C. § 1343. All of the charges alleged in the indictment involved a scheme to defraud in which Proffit misrepresented himself to be a wealthy businessman and convinced various individuals to send him money for ostensibly high return investments in cattle futures. The trial court denied Proffit's motion for a judgment of acquittal and he filed this appeal challenging the sufficiency of the evidence against him. We find

---

* The HONORABLE HUBERT L. WILL, Senior United States District Judge for the Northern District of Illinois, Eastern Division, sitting by designation.

that the government presented more than sufficient evidence and affirm.

## BACKGROUND

Between November 1989 and July 1991 Proffit solicited a total of approximately $180,000 from thirteen individuals for the purpose of investing in cattle. None of these investors ever received any of their money back, and most, despite their best efforts, never heard from Proffit again. The reason, as charged by federal prosecutors, is that Proffit never invested nor intended to invest any of the funds he received, but rather, was engaged in a sweet-talking scheme to defraud.

As alleged in the indictment, Proffit's basic modus operandi was as follows. He would scan private advertisements of expensive items or services, contact presumably affluent sellers, represent himself to be a wealthy Kansas City businessman involved in the meat packing industry, and feign interest in purchasing the high priced items or services that they had available for sale. Tailoring the details of his story to each target, Proffit would convince these individuals of his supposed sincerity in doing business with them. After gaining their confidence, often over time, but always before consummating any purchase from them, he would mention a great investment opportunity in cattle to which he was privy and willing to share.

Frequently insinuating some insider knowledge, Proffit would guarantee high returns in short order. All that was required was to wire some money, as much as possible, to his account. Actually, Proffit had three accounts, and upon receiving a transfer he would soon make a corresponding withdrawal—to his pocket. Before any questions were asked, and the scheme unravelled, eleven of these thirteen investors had sent him a total of $160,000.

At trial, the thirteen investors, Proffit's former wife, several former bank employees, FBI agents and others, testified as to Proffit's actions. The investors related how Proffit, in some instances calling himself "George Swift," had duped them with his smooth talking references to nonexistent associations, business ventures, partnerships, jet airplanes, and cattle ranches. They told how they had wired thousands of dollars to Proffit for alleged investments only to soon find that his phone number was fake or disconnected and that their money was missing. Former employees of Home Savings, Blue Valley Federal and Merchants bank identified Proffit and testified about his accounts, the wire transfers from investors, and subsequent withdrawals. Corresponding bank records were also produced which documented these transactions.

Proffit's ex-wife explained that when she lived with Proffit between 1989 and 1991 he was not employed anywhere, yet owned a Mercedes and paid for numerous trips to Las Vegas, New Orleans and Florida, as well as dinners, expensive gifts, and even a fur coat for her. She also identified phone bills and signatures on cancelled checks which further connected Proffit to the investors and their lost money. Agents of the FBI confirmed the money transfers to Proffit's accounts and added the details of their investigation, and an auditor of the Commodities Futures Trading Commission, the agency that regulates investments such as cattle futures, also testified that neither Proffit nor his alleged companies were registered traders.

Proffit called no witnesses and did not testify, but at the close of the government's case moved for a judgment of acquittal pursuant to Fed.R.Crim.P. 29, claiming that there was insufficient evidence to convict him. The District Court denied the motion and the jury returned a verdict of guilty on all thirteen counts. On September 23, 1994, Proffit was sentenced to twenty-four months in jail. This appeal, of course, followed.

## DISCUSSION

On appeal, Proffit again asserts that the evidence against him at trial was insufficient to justify submission of the case to the jury. He claims that the prosecution failed to prove essential elements of the crime charged—that he voluntarily and intentionally devised a scheme to obtain money by means of false representations or promises, with intent to defraud—and that no reasonable jury could have found otherwise. Prof-

fit does not dispute that he solicited the money, but argues instead that "[t]here is absolutely no evidence indicating that this money was not used for investment purposes." Cattle futures are a risky business, he claims, and there is no crime committed when such investments go bad.

To begin, we note that Proffit faces a heavy burden in attempting to overturn his conviction based upon the sufficiency of the evidence. On review, we must view the evidence in the light that is most favorable to the government, and in so doing, give the government the benefit of all reasonable inferences drawn from that evidence. *United States v. Long*, 952 F.2d 1520, 1524–25 (8th Cir.1991), *cert. denied,* — U.S. ——, 113 S.Ct. 298, 121 L.Ed.2d 222 (1992). We will reverse the conviction only if under the above analysis we conclude that no reasonable trier of fact could find guilt beyond a reasonable doubt. *United States v. Ballew*, 40 F.3d 936, 942 (8th Cir.1994).

■ Proffit is quite right that both the existence of a scheme to defraud and the specific intent to defraud are essential elements in the crime of wire fraud.[1] He is in error, however, about what evidence is necessary to establish these elements. Contrary to Proffit's contentions, the government need not trace the whereabouts of every dollar, or interview every broker in the nation, in order to prove that he never invested the money sent to him. Rather, the existence of a knowing and intentional scheme to defraud can properly be inferred from all of the facts and circumstances surrounding his actions. *United States v. Urban*, 746 F.2d 1345, 1346 (8th Cir.1984). Here, there was more than sufficient direct and circumstantial evidence presented for the jury to reasonably draw such an inference and to conclude that Proffit intended to defraud his investors.

■ Proffit would have us believe that he invested big in cattle and lost. Unfortunate-

ly for him, not a shred of evidence supports this proposition. In contrast, as described above, numerous witnesses testified about the web of lies that Proffit weaved in order to convince investors to send him their money. Bank records and phone bills tied Proffit to each of the thirteen individuals and demonstrated how their money was transferred into his accounts and then withdrawn by him in cash, money order or cashier's check. Proffit's ex-wife confirmed that he was not employed and yet lived well and spent relatively large sums of money on cars, vacations and gifts. The overwhelming inference to be drawn from the evidence is that Proffit engaged in wire fraud, and it was more than reasonable for the jury to find accordingly. *See United States v. Lanier*, 838 F.2d 281 (8th Cir.1988).

### CONCLUSION

More than sufficient evidence was presented at trial to allow a reasonable jury to find Proffit guilty of wire fraud beyond a reasonable doubt. Therefore, the district court properly denied Proffit's motion for a judgment of acquittal and his convictions are hereby affirmed.

---

1. *Atlas Pile Driving Co. v. DiCon Financial Co.*, 886 F.2d 986, 991 (8th Cir.1989). *See also Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit* 6.18.1341 (West 1994) (the four essential elements to the crime of wire fraud are: (1) that the defendant voluntarily and intentionally devised or participated in a scheme to defraud another out of money; (2) that the defendant did so with the intent to defraud; (3) that it was reasonably foreseeable that interstate wire communications would be used; and (4) that interstate wire communications were in fact used).