# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 96-2309

_____

United States of America,      *
        *
       Appellee,      *
        *
     v.      *
        *
Reynaldo Quesada Morales,      *
        *
       Appellant.      *

_____

No. 96-2351

_____

Appeals from the United States
District Court for the
Eastern District of Missouri.

United States of America,      *
        *
       Appellee,      *
        *
     v.      *
        *
Juan Felix Toca,      *
        *
       Appellant.      *

_____

Submitted: January 16, 1997

Filed: May 6, 1997

_____

Before WOLLMAN, FLOYD R. GIBSON, and HANSEN, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Reynaldo Quesada Morales and Juan Felix Toca appeal their convictions and resulting sentences imposed by the district court.[1] The jury convicted both men of conspiracy to distribute marijuana in violation of 21 U.S.C. § 846. Toca was also convicted of possession of heroin with intent to distribute in violation of 21 U.S.C. § 841 (a)(1). Both argue that the evidence adduced at trial proved two conspiracies rather than a single overall conspiracy and that the district court erred in computing the amount of marijuana to establish their base offense levels.[2] We affirm.

**I.**

On January 11, 1995, the United States Postal Inspection Service in Chicago, Illinois, intercepted a package sent from a fictitious address in San Diego, California. The package was addressed to Felix Toca at Ricardo Atanay's address. A federal search warrant was obtained and the package was found to contain 2232.10 grams of marijuana contained in freezer bags wrapped in plastic and contact-type paper. A controlled delivery was made to Atanay, who signed for the package with the name "Felix Toca."

---

[1]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

[2]In his opening brief, Quesada Morales argued that the district court erred in not granting his motion to dismiss based on double jeopardy. Appellant concedes in his reply brief that this claim is foreclosed by the Supreme Court's decision in United States v. Ursery, 116 S. Ct. 2135 (1996).

Toca has alleged on appeal that his right to a speedy trial was violated. Toca waived this claim by failing to move for dismissal prior to trial. See United States v. Kime, 99 F.3d 870, 881 (8th Cir.), cert. denied, 117 S. Ct. 1015 (1997).

-2-

Upon their departure from Atanay's residence, Toca and Atanay were taken into custody, and Toca was later released.

In addition to the transaction in Chicago, evidence was presented to show that a package of marijuana was sent through the mail to Eliseo Duenas in St. Louis, Missouri, sometime in early May of 1995. Duenas testified that he met Quesada Morales in February or March of 1995 and that in April or May of that year Quesada Morales asked Duenas if he was interested in making some money by accepting delivery of a package. Duenas testified that they later discussed whether Duenas would also be interested in selling marijuana. Duenas accepted delivery of the package and gave it to Quesada Morales that same day. This package was never recovered by the authorities.

Duenas testified that Quesada Morales asked him to accept delivery of a second package that would be sent by Quesada Morales' cousin "Pipi" (later identified as Toca). Duenas agreed, and on May 10, 1995, an express mail package was sent from a fictitious address in San Diego to Duenas in St. Louis. The package was intercepted by postal inspectors in St. Louis. After obtaining a search warrant, the inspectors found that the package contained 6162.57 grams of marijuana. A beeper was placed in the package, and on May 11, 1995, a controlled delivery was made to the address on the package. Duenas signed for the package and carried it into the residence. About a half an hour later, Quesada Morales, Toca, and Keisha Donaby arrived at Duenas's residence, and within minutes of their arrival the beeper indicated that the package had been opened. Pursuant to a previously obtained search warrant, St. Louis police entered the residence and found the just-delivered package, along with two balls of black tar heroin, scales, and some additional marijuana.

Quesada Morales, Toca, and Duenas were arrested and subsequently indicted by a grand jury for conspiracy to distribute marijuana. A superseding indictment charged Toca and Duenas with possession of heroin with intent to distribute. Duenas pled guilty to both charges. At their joint trial, Quesada Morales and Toca were convicted of engaging in a single overall conspiracy based upon the above-described marijuana deliveries.

The district court calculated Quesada Morales' and Toca's base offense levels and resultant sentences based on all three drug transactions, which the court concluded amounted to a total of 12,531.50 grams of marijuana -- 6162.57 grams from the St. Louis seizure, 2232.10 grams from the Chicago seizure, and 4136.83 grams from the unrecovered package. The court determined from the two seized packages of marijuana that the weight of the marijuana comprised fifty-seven percent of the total weight of each of the packages. Using this figure, the court then estimated that the weight of the marijuana contained in the unrecovered package would be approximately 4136.83 grams. Based upon Quesada Morales' offense level of eighteen and criminal history category of six, the district court sentenced him to sixty months' imprisonment. Based upon Toca's offense level of twenty-four and a criminal history category of four, the district court sentenced him to ninety-six months' imprisonment.

## II.

Quesada Morales and Toca both appeal their convictions on a single overall conspiracy, contending that the evidence at trial proved the existence of two separate conspiracies. Whether the government's proof established a single conspiracy or multiple conspiracies is a question of fact for the jury. See United States

v. Jenkins, 78 F.3d 1283, 1288 (8th Cir. 1996).  "'A single conspiracy is composed of individuals sharing common purposes or objectives under one general agreement.'"   United States v. Maza, 93 F.3d 1390, 1398 (8th Cir.) (quoting United States v. Davis, 882 F.2d 1334, 1342 (8th Cir. 1989)), cert. denied, 117 S. Ct. 1008 (1997).  If the jury finds "one overall agreement to commit an illegal act, the evidence establishes a single conspiracy." United States v. Regan, 940 F.2d 1134, 1135 (8th Cir. 1991). An overall agreement can be inferred when "the participants shared a common aim or purpose and mutual dependence and assistance existed."  Id.

A variance results where a single conspiracy is charged but the evidence at trial shows multiple conspiracies.  See United States v. Jones, 880 F.2d 55, 66 (8th Cir. 1989) (citing Kotteakos v. United States, 328 U.S. 750, 755-56 (1946)).  In determining whether a variance exists, we consider the totality of the circumstances, including the nature of the activities, the location and time frame in which the activities were performed, and the participants involved. See United States v. McCarthy, 97 F.3d 1562, 1571 (8th Cir.), cert. denied, 117 S. Ct. 1011, and cert. denied, 117 S.Ct. 1284 (1997).

Even after viewing the evidence in the light most favorable to the verdict, we conclude that the jury could not have reasonably found a single conspiracy.  Rather, based upon the totality of the circumstances, we conclude that two separate conspiracies existed.  Although the activities in both Chicago and in St. Louis involved the distribution of marijuana, the operations took place in two wholly separate locations, were separated by more than four months, and had but one common participant, Toca.

The evidence shows that there was an agreement between Toca and Atanay to distribute marijuana in the Chicago area and an

agreement among Toca, Quesada Morales, and Duenas to distribute marijuana in the St. Louis area. What the evidence did not show was that these two agreements were connected in any way. No evidence was presented to show that Quesada Morales or Duenas joined, assisted, or even knew of the Chicago agreement, or that Atanay joined, assisted, or knew of the operation in St. Louis.

The government attempts to associate the two agreements by maintaining that both transactions had a common participant, Toca, and that they both involved the distribution of marijuana. However, "an overlap in personnel [does] not prove one overall agreement." United States v. Rosnow, 977 F.2d. 399, 406 (8th Cir. 1992) (citations omitted). Moreover, the fact that both transactions involved agreements to mail and distribute marijuana, that both operations were apparently headed by Toca, and that some of the participants of each operation knew each other, is not enough to prove a single conspiracy. See id. (similar acts by similar people, assistance by some of the same people, and knowledge of some of the participants not enough to show a common purpose or objective). We find that the record is devoid of any evidence that "the participants shared a common aim or purpose and mutual dependence and assistance existed," and we therefore conclude that a variance existed between the indictment and the proof offered at trial.

The existence of a variance does not, however, mandate reversal. Id. Rather, we must reverse only when a "spillover" of evidence from one conspiracy to another has prejudiced a defendant's substantial rights. See United States v. Jones, 880 F.2d at 66. Quesada Morales argues that evidence introduced at trial prejudiced him in that there was substantial inflammatory testimony unrelated to him which the jury imputed to him through

-6-

the instructions on co-conspirator's acts and statements.  We do not agree.

The government presented no evidence that purported to connect Quesada Morales to the Chicago transaction.  Indeed, the government never brought up Quesada Morales' name during its presentation of the evidence relating to the Chicago transaction.  In addition, both defendants elicited testimony that Quesada Morales' name appeared nowhere on the mailing receipts, that there was no indication that the packages were sent at his direction, and that he was not present during the controlled delivery in Chicago.  Furthermore, this was not a complex case, nor were the events leading up to the indictments complicated or confusing, for the case involved only four participants, two defendants, and three drug transactions.  See Jones, 880 F.2d at 66 ("this case did not involve so many coconspirators and conspiracies that a jury could not be expected to give separate and individual consideration to the evidence against each defendant").  Compare Rosnow, 977 F.2d at 408 ("due to the number of defendants, the complexity of the issues, the failure of the court to give a limiting instruction, and the lack of overwhelming evidence of guilt," the variance substantially prejudiced the defendants).

Moreover, at different points during the presentation of the government's case defense counsel requested and received limiting instructions directing the jury to consider certain testimony only against Toca.  The court also gave the following instruction to the jury:

> You should understand that merely being present at the scene of an event, or merely acting in the same way as others or merely associating with others, does not prove that a person has joined in an agreement or understanding.  A person who has no knowledge of a

conspiracy but who happens to act in a way which advances some purpose of one, does not thereby become a member.

The court further instructed that "[p]roof of separate or independent conspiracies is not sufficient." These instructions lend additional support to our conclusion that the variance did not prejudice Quesada Morales. See United States v. Rosnow, 977 F.2d at 407 (in determining whether there was prejudicial spillover, the adequacy of the trial court's instructions are an important factor) (citations omitted).

Toca makes a similar argument, asserting that "the introduction of the numerous, unrelated transactions was so confusing that the jury could not separate them from the charged transactions." We cannot see how Toca could have been prejudiced by the variance, for he admits not only the existence of both of the conspiracies, but also his participation in both. Because the evidence shows, and Toca admits, that he was a member of both conspiracies, "'the danger of prejudice from [spillover] is minimal, if not non-existent.'" Jones, 880 F.2d at 66 (there was no prejudicial spillover because "whether the facts show one or two conspiracies is here immaterial, for even if there were two conspiracies the evidence clearly shows that [the defendant] participated in both")(quoting United States v. Scott, 511 F.2d 15, 20 (8th Cir. 1975)).

## III.

Both Quesada Morales and Toca challenge the district court's method for calculating the amount of marijuana contained in the unrecovered package. As previously explained, the district court used the figures from the two seized packages of marijuana to estimate the amount contained in the unrecovered package. The

court determined that the net weight of marijuana contained in the seized packages was fifty-seven percent of the packages' total weight. The court used the same percentage to determine the net weight of the unrecovered package. We review this method and the determination of drug quantity for clear error. See, e.g., United States v. Pugh, 25 F.3d 669, 677 (8th Cir. 1994); United States v. Brown, 19 F.3d 1246, 1248 (8th Cir. 1994) (per curiam).

The Sentencing Guidelines provide that unrecovered drug quantities can be estimated from similar known transactions. See U.S.S.G. § 2D1.1, comment. (n. 12) ("When there is no drug seizure . . ., the court shall approximate the quantity of the controlled substance. In making this determination, the court may consider . . . similar transactions in controlled substances by the defendant . . . ."); see United States v. Byler, 98 F.3d 391, 395 (8th Cir. 1996); United States v. Pugh, 25 F.3d at 677. We conclude that the district court's methodology was a reasonable way to estimate the drug quantity of the unrecovered package and that its finding was not clearly erroneous.[3]

The judgments are affirmed.
A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[3]Because Quesada Morales' offense level would have been the same had the district court not included the marijuana seized from the Chicago transaction in calculating the drug quantity, any error in including that marijuana in the quantity determination was harmless.