# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3429

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District |
| | * | of Nebraska. |
| LaAnthony Cletae Cain, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: March 13, 2007
Filed: June 6, 2007

_____

Before MELLOY, SMITH, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

LaAnthony Cletae Cain appeals his conviction for conspiracy to distribute, and possession with intent to distribute, crack cocaine. *See* **21 U.S.C. §§ 841(a), 846**. Cain argues: insufficiency of the evidence; a variance between the indictment and the evidence; and, error in denying a sixty-percent downward variance from the range set by the United States Sentencing Guidelines. This court affirms.

I.

The standard of review for insufficiency of the evidence is "very strict." *United States v. Barth*, 424 F.3d 752, 760-61 (8th Cir. 2005). "When examining the sufficiency of the evidence, we review the evidence in a light most favorable to the verdict . . .. We resolve evidentiary conflicts in favor of the government and accept all reasonable inferences drawn from the evidence that support the jury's verdict." *Id.* at 761 (citations omitted). This court upholds jury verdicts supported by substantial evidence, i.e., "if a reasonable jury could have found the defendant guilty beyond a reasonable doubt." *United States v. Fitz*, 317 F.3d 878, 881 (8th Cir. 2003). This standard of review applies to the bench trial[1] in this case. *See United States v. Erhart*, 415 F.3d 965, 969 (8th Cir. 2005).

The indictment charges conspiracy to distribute, and possession with the intent to distribute, 50 grams or more of crack cocaine between January 1996 and March 2005. "To convict a defendant of conspiring to distribute a controlled substance, there must be sufficient evidence that: (1) a conspiracy existed for an illegal purpose; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly joined in it. The conspiracy's existence may be proved by direct or circumstantial evidence." *United States v. Sanchez-Garcia*, 461 F.3d 939, 945 (8th Cir. 2006) (citations omitted). *See also United States v. Lopez*, 443 F.3d 1026, 1030 (8th Cir.) (en banc), *cert. denied*, 127 S. Ct. 214 (2006) ("a defendant may be convicted for even a minor role in a conspiracy, so long as the government proves beyond a reasonable doubt that he or she was a member of the conspiracy."). The testimony of seven witnesses at Cain's trial clearly supports the conviction.

---

[1] The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

Damario Waters testified that he was Cain's regular cocaine supplier between 1997 and 2002 (except when one or the other was incarcerated). They dealt drugs together in the Lincoln area. Waters sold Cain crack and powder cocaine, often "ounces" at a time and on credit; Cain paid after re-selling the drugs. Twice, Waters watched Cain cook powder into crack (once using cocaine from Waters). Waters posted bond for Cain in Colorado so he could sell crack for Waters. Waters and Cain worked together less frequently after Cain began dealing with Steven Green in 2002; their final transaction occurred two weeks before Waters's arrest in October 2004.

Steven Green testified that he and Cain sold crack together from September 2002 until September 2005, when Green was arrested. In the beginning, they sold crack from the Gaslight trailer park in Lincoln "every day." Green's source was in Omaha; Cain got his drugs from Waters. Twice, they pooled money to buy crack in Omaha, splitting the drugs before re-selling them. In March 2003, Green and Cain began traveling to Denver to buy powder cocaine. They together made five or six trips; Green alone went three or four times. Each time, they bought between nine ounces and a half-kilogram of powder. Green gave Cain powder on credit, later selling it to him at cost. Green said Cain regularly cooked crack from powder, which they re-sold. At trial, Green said he and Cain were "partners":

> We kicked it. While we kicked it, we sold drugs together, as in, say we was at the trailer. We was sitting out there playing cards or smoking weed, drinking, and some customers come in. He might go. I mean, sometimes he would come pick me up, I'd come pick him up in the car, and we'd jump in the car together. 'I need to go here to make a sale. You drive me over here.' Go here. Stop over here. Stop over there. Stop to go get something to eat. Stop to go do this. Stop to go do that together.

Chester Doyle testified to visiting an apartment in Lincoln in spring 2003 and watching Cain cook powder into crack. Doyle then bought crack from Green and re-

sold it. Once, Doyle called Green to buy some crack, and Cain answered Green's phone. Cain sold Doyle a half-ounce for $550.

Theophilies Harvey met Cain and Green at a house in summer 2004. There, he watched Green give Cain several ounces of powder, which Cain cooked into crack. Harvey bought a quarter-ounce of the crack for $250. Later that summer, Harvey bought another quarter-ounce from Cain at the Gaslight trailer park for $250. Some months later, Harvey met Cain at a gas station, where Cain offered to front him an ounce of crack (Harvey declined).

Jimmy Amos testified he saw Cain sell three ounces of crack behind a convenience store for $3,300. Cain later showed Amos a bag of cash ($40,000, by Cain's telling) that Cain said he and Green earned selling crack and powder. Amos testified that Cain described himself as Green's "right-hand man," because they traveled together to buy drugs and because Cain cooked the powder into crack.

Robyn Jackson testified she regularly bought crack from Cain and Waters to re-sell. She called Waters to arrange the sales; often Cain showed up too. Several times Cain handed her the drugs. After Waters was arrested in October 2004, Jackson began buying from Green and Cain. Once, she gave Green $450, and Cain handed her a half-ounce of crack.

Demond Wilkinson testified Cain sold him one ounce of crack for $900, and later a half-ounce for $600. Wilkinson smoked some of it and sold the rest.

Cain mainly attacks the credibility of these witnesses, emphasizing their felony records, plea bargains, inconsistencies, and opportunities to coordinate their testimony. But all this was exposed and discussed at trial, and the witnesses corroborate each another. "Attacks on the sufficiency of the evidence that call upon this court to scrutinize the credibility of witnesses are generally not an appropriate

-4-

ground for reversal." **United States v. McKay**, 431 F.3d 1085, 1094 (8th Cir. 2005). *See also* **United States v. Jones**, 254 F.3d 692, 695 (8th Cir. 1996) (district court judge's "credibility findings are well-nigh unreviewable, so long as the findings are not internally inconsistent or based on testimony that is incoherent, implausible, or contradicted by objective evidence in the case."). This case is no exception.

The government offered ample direct and circumstantial evidence against Cain. A rational trier of fact could find Cain conspired to distribute, and possessed with intent to distribute, crack. Substantial evidence supports the conviction.

II.

Cain next alleges "there is an issue as to whether the conspiracy proven matched the conspiracy alleged in the Indictment." According to him, the indictment alleges a single conspiracy, but the government's evidence shows two: one between Cain and Waters, and another between Cain and Green. Because "Mr. Green and Mr. Waters have nothing to do with each other," he concludes that the evidence varies from the indictment.

Contrary to Cain's argument, the indictment does not allege "a single conspiracy that occurred between January 1, 1996, and March 31, 2005." Rather, the indictment reads,

> Between on or about January 1, 1996 and on or about March 31, 2005, in the District of Nebraska and elsewhere, LAANTHONY CLETAE CAIN, a/k/a TAE, a/k/a FOUR-FINGER TAE, the defendant herein, did knowingly and intentionally combine, conspire, confederate, and agree with other persons, some known and some unknown to the Grant Jury, to distribute and possess with the intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of cocaine base, also known as crack cocaine . . ..

-5-

Cain conspired with Green, Waters, and others, to purchase, prepare, and sell crack cocaine in the District of Nebraska. In the beginning, Cain worked with Waters. Later, he worked less with Waters and more with Green. "A single conspiracy may exist even if the participants and their activities change over time, and even if many participants are unaware of, or uninvolved in, some of the transactions." *United States v. Smith*, 450 F.3d 856, 860 (8th Cir. 2006). That is the case here.

"A variance results where a single conspiracy is charged but the evidence at trial shows multiple conspiracies. In determining whether a variance exists, we consider the totality of the circumstances, including the nature of the activities, the location and time frame in which the activities were performed, and the participants involved." *United States v. Morales*, 113 F.3d 116, 119 (8th Cir. 1997) (citations omitted).

"The existence of a variance, does not, however, mandate reversal." *Id.* at 119. This court "will reverse only if we find the evidence adduced at trial does not support a finding of a single conspiracy, and it determines the defendants were prejudiced by the variance." *Barth*, 424 F.3d at 759. "Prejudice is established upon a showing: (1) the evidence relating to the other conspiracies had prejudicial spillover effects as to the conspiracy charged, (2) the indictment provided insufficient notice of what evidence would be provided against the defendant at trial, or (3) the indictment was so vague as to risk subsequent prosecution for the same conduct." *Smith*, 450 F.3d at 860 n.1.

Cain appears to claim prejudice from "spillover":

Mr. Cain was prejudiced because the Government was allowed to 'bolster' the facts in each conspiracy by using the testimony of Mr. Green and Mr. Waters. If each conspiracy had been separately charged, Mr. Green would not have been able to testify in the conspiracy case

-6-

involving Mr. Waters, and Mr. Waters would not have been able to testify in the conspiracy case involving Mr. Green.

Cain claims he "was also prejudiced by the variance in the Indictment from the fact that he had no notice that the Government would present evidence of two conspiracies." Otherwise, he asserts "he likely would not have waived his right to a jury trial since his defense could then have been more fact-based rather than based upon the legal argument that no agreement was proven."

This court disagrees. The indictment gave Cain notice of the evidence to be adduced at trial. As to any spillover, Waters testified he sold Green ounces of crack cocaine "here and there." Green testified that he knew Waters, once bought a car from him, and observed Cain cooking crack at Waters's trailer. These facts refute Cain's claim that "Mr. Green and Mr. Waters have nothing to do with each other," that "there was no connection between them." As in *Barth*, Cain "faced little or no risk of prejudice from spillover evidence because he was involved in all stages and aspects of the crimes committed." *See Barth*, 424 F.3d at 759. Regardless of the number of conspiracies, the government presented sufficient evidence that Cain was involved in all of them. *See id.* at 759-60. Any variance did not prejudice Cain.

III.

The presentence report calculated Cain's criminal history category at IV, his offense level at 38, and thus a 324-to-405 month Guidelines range. Finding an overstatement of criminal history, the district court decided "Category III more accurately represents the true underlying offense behavior of the countable convictions and more accurately represents the likelihood of the defendant re-offending." The court sentenced Cain to 292 months, at the bottom of the new 292-to-365 month Guidelines range. Cain requested the ten-year mandatory-minimum sentence – a sixty percent downward variance – which the district court denied.

Cain's sentence, within the Guidelines range, is "presumptively reasonable." *United States v. Lincoln*, 413 F.3d 716, 717 (8th Cir. 2005). This presumption may be overcome if the district court fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only the appropriate factors but in weighing those factors commits a clear error of judgment. *United States v. Haack*, 403 F.3d 997, 1004 (8th Cir.), *cert. denied*, 126 S. Ct. 276 (2005). Relevant factors are those in 18 U.S.C. § 3553(a). *United States v. Booker*, 543 U.S. 220, 261 (2005). The standard of review is abuse of discretion. *United States v. Dalton*, 404 F.3d 1029, 1032 (8th Cir. 2005).

On appeal, Cain emphasizes his troubled childhood, lack of parental guidance, early involvement with drug dealers, and that some of his conduct occurred while he was a juvenile.[2] Cain argues that "a 10 year sentence is more than adequate to accomplish the goals of sentencing," which he defines as the nature and circumstances of the offense, his history and characteristics, avoiding unwarranted sentencing disparities, reflecting the seriousness of the offense, affording adequate deterrence, and protecting the public from further crimes. *See* **18 U.S.C. § 3553(a)**. The district court disagreed, considering all these factors but citing the need to protect the public from a dangerous person.

Cain also raises "disparity concerns based upon the sentences given to other persons involved in the conspiracy." Cain focuses on the sentences given to Green (151 months) and Waters (24 months). Cain claims that Green, "as an adult, significantly influenced Mr. Cain as a teenager and led him into the conduct for which he received a 292 month prison sentence." As to Waters, he "was more culpable, influenced Mr. Cain during Mr. Cain's teen years, and ended up with a sentence that

---

[2] Cain claims, "There is also a sentencing disparity due to the fact that Mr. Cain's offense involved crack cocaine." This court disagrees. *See United States v. Spears*, 469 F.3d 1166, 1176 (8th Cir. 2006) (en banc).

amounts to 7.4% of the sentence Mr. Cain would receive if sentenced at the low end of the guideline range." But as the district court explained, Cain is not similarly situated to Waters and Green, both of whom cooperated and testified for the government.

This court finds the district court's sentence reasonable, per *United States v. Booker*, 543 U.S. 220 (2005).

IV.

The judgment of the district court is affirmed.

_____