# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 11-1598

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Guillermo Ortiz, also known | * | District of South Dakota. |
| as Memo, | * | |
| | * | [UNPUBLISHED] |
| Appellant. | * | |

_____

Submitted: October 21, 2011
Filed: January 27, 2012

_____

Before MELLOY, BEAM, and GRUENDER, Circuit Judges.

_____

PER CURIAM.

A jury found Guillermo Ortiz guilty of a single count of conspiracy to distribute 500 grams or more of a mixture or substance containing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846. On appeal, Ortiz argues that his conviction should be reversed because at most the evidence at trial showed multiple, separate conspiracies, rather than the single conspiracy charged in the indictment.

Alternatively, Ortiz contends that a new trial is warranted because the district court[1] erred in its response to a question from the jury. We affirm.

Ortiz was arrested in January 2006 after Sioux Falls, South Dakota law-enforcement personnel ascertained his involvement in a controlled methamphetamine purchase. An ensuing search of Ortiz's home revealed a pipe and digital scale that both tested positive for the presence of methamphetamine, as well as a set of sales ledgers. The ledgers and corroborating testimony indicated that Ortiz was providing methamphetamine to various individuals for resale. For example, a co-conspirator testified at trial that Ortiz, in association with two partners, received at least four one-pound packages of methamphetamine during 2005 for distribution to resellers in the Sioux Falls area. In addition, Ortiz was employed at a concrete paving company during 2005, and his co-worker Dustin Call testified that Ortiz fronted him at least fourteen grams of methamphetamine for resale that year. The sales ledgers found at Ortiz's home included entries regarding Call. Evidence adduced at trial suggested that Ortiz received more than 2,000 grams of methamphetamine for distribution during 2005.

After his January 2006 arrest, Ortiz pled guilty in state court to possession with intent to distribute a controlled substance and was incarcerated from August 2006 until August 2007. While incarcerated, he met Juan Maldonado. Maldonado testified that, while imprisoned, the two men discussed their respective histories of involvement with methamphetamine. Maldonado was released from prison briefly in 2007, returned after a parole violation, and was released again in the summer of 2008. By no later than the spring of 2009, Maldonado was distributing methamphetamine in Sioux Falls. Maldonado testified that he contacted Ortiz in the late spring of 2009, hoping to expand his methamphetamine sales, and Ortiz

---

[1]The Honorable John B. Jones, United States District Judge for the District of South Dakota.

introduced him to an associate, Troy Rubin. Rubin testified that Ortiz distributed more than 4,000 grams of methamphetamine in 2009 and that Ortiz and Rubin fronted Maldonado a total of four pounds of that methamphetamine during the summer of 2009. In addition, Ortiz returned to his former concrete paving job in 2009, and his co-worker Call testified that he and Ortiz also renewed their distribution relationship. Call stated that Ortiz fronted him about 170 grams of methamphetamine during 2009.

Ortiz was arrested again in April 2010. In May 2010, a grand jury indicted Ortiz on a single count of conspiring to distribute 500 grams or more of methamphetamine "[f]rom on or about 2005, and continuing through the date of this Indictment." Apart from Call, the Government's evidence at trial did not suggest that any of the identified participants in Ortiz's distribution activities during the 2005 time frame became involved with Ortiz's post-imprisonment distribution activities during 2009-2010. Accordingly, the district court included a jury instruction directing the jury to acquit Ortiz if it found that the evidence showed only multiple, separate conspiracies between Ortiz and Call, Ortiz and his other identified 2005 associates, and Ortiz and his other identified 2009-2010 associates.

During its deliberations, the jury submitted two questions to the district court, asking for "a clear definition on the dates of incarceration for Mr. Ortiz" and a definition of "continuing" in the phrase "from on or about 2005, and continuing through May 4, 2010." In response, the district court listed the dates of Ortiz's incarceration and issued the following supplemental jury instruction:

> "[T]he dictionary definition of "continuing" is ["]continuous, constant, needing no renewal, lasting, or enduring."

> In a criminal case, the government is not required to prove that Mr. Ortiz was involved in a conspiracy that filled the entire period charged.

-3-

The jury returned a verdict of guilty, and the district court sentenced Ortiz to 188 months' imprisonment.

Ortiz first asserts that a variance occurred between the indictment on a single conspiracy and the evidence presented at trial, which Ortiz contends showed only multiple conspiracies. Where a defendant argues that the evidence varies from the indictment by establishing multiple and different conspiracies from the single conspiracy charged, "[w]e will reverse only if we find the evidence adduced at trial does not support a finding of a single conspiracy, and we determine [the defendant] was prejudiced by the variance." *United States v. Benford*, 360 F.3d 913, 914 (8th Cir. 2004). Ortiz similarly asserts that, because the evidence supports solely a finding of multiple conspiracies, the evidence was insufficient to support his conviction under the jury instructions given, which required a finding of a single, "continuing" conspiracy from 2005 through May 2010 and directed acquittal if the evidence established solely multiple conspiracies instead. "We review *de novo* the sufficiency of the evidence, viewing the evidence in the light most favorable to the verdict and upholding it if, based on all the evidence and all reasonable inferences in favor of the verdict, any reasonable juror could find the defendant guilty beyond a reasonable doubt." *United States v. Hill*, 410 F.3d 468, 471 (8th Cir. 2005). Thus, both of Ortiz's theories fail if the evidence adduced at trial sufficiently supports the jury's finding of a single conspiracy continuing from 2005 through 2010.

"A single conspiracy is composed of individuals sharing common purposes or objectives under one general agreement," *Benford*, 360 F.3d at 914 (quoting *United States v. Morales*, 113 F.3d 116, 118-19 (8th Cir. 1997)), and "may exist even if the participants and their activities change over time, and even if many participants are unaware of, or uninvolved in, some of the transactions," *id.* (quoting *United States v. Contreras*, 283 F.3d 914, 916 (8th Cir. 2002). "[T]he agreement need not be explicit, but may be tacit, based upon the actions of the defendant." *United States v. Smith*, 450 F.3d 856, 860 (8th Cir. 2006). Whether the government has proved a

single conspiracy or instead solely multiple conspiracies "is a question of fact to be resolved by the jury." *United States v. England*, 966 F.2d 403, 406 (8th Cir. 1992).

Ortiz contends that the nearly two-year gap between his release from prison in August 2007 and the first evidence of his renewed methamphetamine involvement in the late spring of 2009, as well as the Government's purported failure to show that his numerous methamphetamine-distribution associates during 2005 were involved with Ortiz again in 2009-2010, demonstrates that the original conspiracy ended after his imprisonment in August 2006 and that he joined a new conspiracy in the late spring of 2009. As an initial matter, "mere inactivity does not terminate a conspiracy." *United States v. Wessels*, 12 F.3d 746, 750 (8th Cir. 1993). A period of inactivity is merely one circumstance among "the totality of the circumstances, including the nature of the activities, the location and time frame in which the activities were performed, and the participants involved," that indicates whether a single conspiracy existed. *See Morales*, 113 F.3d at 119.

In this case, the evidence suggests that Ortiz obtained the same controlled substance, methamphetamine, typically in quantities of a pound or more and distributed it to resellers in the same geographic location, Sioux Falls, in both 2005 and 2009-2010. While the identified co-conspirators largely changed between 2005 and 2009-2010, a reasonable jury still could conclude that Ortiz and others "shar[ed] common purposes or objectives under one general agreement," *Benford*, 360 F.3d at 914 (quoting *Morales*, 113 F.3d at 118-19), that bridged his period of imprisonment. For example, Ortiz met Maldonado while in prison and discussed his history of methamphetamine involvement, and, as a result, in 2009 Maldonado knew that he could contact Ortiz to assist with expanding his methamphetamine activities. In fact, a short time after being contacted by Maldonado, Ortiz was in a position to front several pounds of methamphetamine to Maldonado. A reasonable jury could infer from this conduct that Ortiz had maintained at least a tacit agreement with his methamphetamine sources.

In addition, at least one identified individual, Dustin Call, was involved in both Ortiz's pre- and post-imprisonment methamphetamine distribution activities. Ortiz suggests that he and Call formed a third conspiracy, independent of Ortiz's other pre- and post-imprisonment distribution activities. However, a single general conspiracy could exist even if Call was unaware of, or uninvolved in, Ortiz's other transactions. *See Benford*, 360 F.3d at 914. Moreover, data regarding Call appeared in the sales ledgers found at Ortiz's home in the same manner as data regarding other resellers associated with Ortiz. A reasonable jury could find that Call was part of a tacit general agreement with Ortiz and others to profit from the sale of methamphetamine in the Sioux Falls area both before and after Ortiz's incarceration.

The jury received a detailed instruction on Ortiz's multiple-conspiracy theory, and we must presume that the jury followed the instructions conscientiously and evaluated the evidence carefully. *See United States v. Delpit*, 94 F.3d 1134, 1144 (8th Cir. 1996). While other conclusions also may have been possible, "[o]ur review of the record, in the light most favorable to the verdict, indicates that it was reasonable for the jury to conclude that a single conspiracy existed." *England*, 966 F.2d at 406-07. As a result, we reject Ortiz's claims that the evidence was insufficient to support the verdict and that a variance occurred.

Ortiz next contends that the supplemental jury instruction that a single conspiracy need not "fill[] the entire period charged" prejudiced the verdict or, alternatively, constructively amended the indictment. A district court has broad discretion to respond to a question from the jury with supplemental instructions, but it must ensure "that any supplemental instructions given are accurate, clear, neutral and non-prejudicial." *United States v. Felici*, 54 F.3d 504, 507 (8th Cir. 1995). A constructive amendment occurs when the essential elements of the offense charged in the indictment are altered, such as through the evidence presented at trial or through jury instructions, in a manner that allows the jury to convict the defendant of

an offense different from, or in addition to, the offense charged in the indictment. *United States v. Starr*, 533 F.3d 985, 997 (8th Cir. 2008).

Here, the supplemental instruction was within the district court's discretion and did not constructively amend the indictment. As an initial matter, the instruction was accurate as a matter of law. *See, e.g.*, *United States v. Baker*, 367 F.3d 790, 799 (8th Cir. 2004) ("[T]he government was not required to prove that [the defendant] was involved in a conspiracy that filled the entire period charged."). In addition, the instruction did not alter an element of the conspiracy offense but merely clarified, at the jury's request, the jury instruction that required a "continuing" agreement throughout the period stated in the indictment. Finally, the supplemental instruction was non-prejudicial because the inclusion of the dictionary definition—"continuous, constant, needing no renewal, lasting, or enduring"—ensured that the importance of the term "continuing" would not be diminished. Indeed, if the jury determined that the agreement joined by Ortiz to distribute methamphetamine in Sioux Falls did not "endur[e]" past his imprisonment or needed "renewal" in 2009, it was required to acquit him. We conclude that "[t]he district court properly exercised its discretion by answering the question in a manner helpful to the jury." *See Felici*, 54 F.3d at 507.

For the foregoing reasons, we affirm Ortiz's conviction.

_____